Kumar KRISHNA, Plaintiff–Appellant,

v.

COLGATE PALMOLIVE COMPANY and The Equitable Group & Health Insurance Company, Defendants,

Rochelle S. Kapur, as Administratrix CTA of the Estate of Brij L. Kapur, Counterclaim Defendant–Appellee,

and

Rochelle S. Kapur, Individually, Nand L. Kapur, and Krishna Lal Kapur, Counterclaim Defendants.

No. 648, Docket 92–7809.

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1992.

Decided Sept. 9, 1993.

Mark S. Cash, New York City, for plaintiff-appellant.

Joseph Trachtenberg, Blauvelt, NY, for counterclaim defendant-appellee.

Before: LUMBARD, WINTER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Kumar Krishna appeals from an order entered July 15, 1992 in the United States District Court for the Southern District of New York, Charles S. Haight, Jr., *Judge,* that denied Krishna's motion for summary judgment seeking to recover funds payable under an insurance policy on the life of decedent Brij L. Kapur ("Brij"), and granted summary judgment in favor of counterclaim defendant-appellee Rochelle S. Kapur ("Rochelle") awarding the proceeds of the policy to Rochelle in her capacity as Administratrix CTA of the Estate of Brij L. Kapur. *See Krishna v. Colgate Palmolive Co.,* No. 90 Civ. 4116 (CSH), 1992 WL 176633 (S.D.N.Y. July 14, 1992).

We reverse and remand.

## Background

This action arises out of conflicting claims to proceeds due under a group life insurance policy (the "Policy") issued by The Equitable Life Assurance Society of the United States[1]

1. The complaint in this action apparently mis- named the Equitable defendant as the Equitable

to the Colgate Palmolive Company ("Colgate") under which individual life insurance coverage was provided to Brij, an employee of Colgate.

The Policy provides that:

The beneficiary of the employee's insurance for loss of life will be the person(s) named by the employee as shown on the records kept on this policy. An employee may change such beneficiary at any time by giving written notice to the Equitable. Such change will take effect on entry in such records.

If there is a part of the insurance for loss of the employee's life for which there is no named beneficiary living at the death of the employee, that part will be paid in a lump sum to the survivors in the first surviving class of those that follow: the employee's (a) spouse; (b) children; (c) parents; or (d) brothers and sisters. If none survives, that part will be paid in a lump sum to the employee's estate. .

. . . .

Insurance records will be kept to show, as to each person insured, all the data the Equitable needs to administer this policy. Such records will be set up and kept by the Equitable; or, if the Policyholder and the Equitable so agree by the Policyholder.

At the time of his death, Brij was insured under the Policy for $71,520.00.

On August 15, 1983, Brij made two separate beneficiary designations. In one, he designated Krishna, Brij's cousin, as sole beneficiary; in the other, he designated both Krishna and Krishna's wife as beneficiaries.[2] On August 16, 1985, Brij made a third beneficiary designation naming only Krishna as the beneficiary under the Policy.

On March 25, 1989, Brij executed a codicil (the "Codicil") to his previous will dated June 2, 1982. The Codicil stated:

In order to supersede my Will executed in favour of Kumar Krishna ... I, Brij Lal

Kapur ... give and bequeath to my real younger brother Krishen Lal Kapur ... my cash accounts with Colgate Company, New York, N.Y., Provident Bank and two Savings Bank accounts with the Chemical Bank ... Teaneck, N.J. and any other amount both real and personal registered in my name.

The Codicil also bequeathed to Krishen Lal Kapur "all the rest, residue and remainder of [Brij's] property both real and personal, wheresoever and howsoever situate."

Subsequently, in letters to Krishna and Chemical Bank dated September 7, 1989, Brij, through his attorney, revoked a power of attorney previously granted to Krishna and his wife in October 1987 over certain bank accounts maintained by Brij at Chemical Bank, and requested that Krishna return the power of attorney to Brij. The letter to Krishna further advised Krishna that the June 2, 1982 will naming Krishna and his wife as beneficiaries had been "superceded" by a "new will in which you are no longer named as beneficiaries," and requested the return of the prior will, which had been in Krishna's possession. Finally, the letter advised Krishna that Brij would not pursue a prior request for the return of a Persian carpet and a tiger skin that he had previously given to Krishna. On September 15, 1989, the Krishnas returned the power of attorney, the prior will, two keys to Brij's home, and two keys to a bank safety deposit box to Brij's attorney.

On December 21, 1989, Brij executed a new will which revoked all his prior wills and codicils. The new will, like the Codicil, made no specific reference to the Policy, but unlike the Codicil, did not mention "cash accounts with Colgate" or "any other amount ... registered in my name." Rather, the will made ten specific pecuniary bequests to various relatives, and then stated in a residuary clause:

---

Group & Health Insurance Company. Equicor, Inc. ("Equicor") has undertaken the obligation to make payments under the Policy, and is accordingly the Equitable entity that has a continuing interest in this litigation.

2. Krishna's wife, Dr. Valerie Krishna, is not a party to the current action. According to Colgate and Equicor, she has agreed to release any claim she may have under the Policy. She has not been interpleaded by Colgate or Equicor.

All the rest, residue and remainder of my estate both real and personal of whatsoever kind or nature and wheresoever situate, including any property subject to a power of appointment exercisable by me, I give, devise and bequeath to my sister-in-law, ROCHELLE S. KAPUR, if she shall survive me, in appreciation for the care and comfort which she has provided to me during an illness. . . . If my said sister-in-law, ROCHELLE S. KAPUR, does not survive me, I give my said residuary estate to my nephew, MUKUL D. KAPUR.

Brij died on December 30, 1989. Thereafter, Krishna delivered proof of Brij's death to Colgate and demanded payment of the insurance due under the Policy. On January 23, 1990, Rochelle was appointed administratrix CTA of Brij's estate. Rochelle thereafter expressed to Colgate an interest in pursuing a claim to the Policy proceeds.

On or about May 29, 1990, Krishna commenced this action in the Supreme Court of the State of New York, County of New York, seeking recovery on the Policy. On June 18, 1990, Colgate and Equicor removed the case to federal court on the basis that Krishna's claims arose under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 (1988) *et seq.* ("ERISA"), because Brij's life insurance coverage was provided as part of an employee welfare benefit plan maintained by Colgate. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987); *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 10–12 (2d Cir.1992). Colgate and Equicor then filed an answer in which they asserted a counterclaim for interpleader, alleging that Krishna, Rochelle, "and possibly other persons described under the [Policy]" were adverse claimants to the proceeds of Brij's life insurance. Thereafter, pursuant to court order, Equicor deposited the proceeds of Brij's insurance policy with the court. In a memorandum opinion and order filed July 2, 1991, the district court granted the application to interplead Rochelle, individually and in her capacity as administratrix, as well as Brij's brothers, Nand L. Kapur and Krishen Lal Kapur.

Krishna then moved for summary judgment. In a July 14, 1992 memorandum opinion and order, the district court denied that motion, and, *sua sponte,* granted summary judgment in favor of Rochelle in her representative capacity as administratrix of Brij's estate. *See Krishna,* 1992 WL 176633, at \*5. The district court concluded that the execution of the Codicil superseding the June 2, 1982 will and the revocation of the power of attorney previously granted to Krishna by Brij "left no doubt that [Brij] intend[ed] no further personal or financial contact with [Krishna]." *Id.* In addition, the court granted a motion by Colgate and Equicor to be discharged from liability on the Policy, enjoined all the parties to the suit from instituting any action in any court concerning distributions pursuant to the Policy, and denied Colgate and Equicor's application for attorney fees. *Id.* at \*6–7.

This appeal followed.

### Discussion *

■ The comprehensive provisions of ERISA regulate "employee benefit plan[s]," 29 U.S.C. § 1003 (1988), defined to include "employee welfare benefit plan[s]" and "employee pension benefit plan[s]," or both. 29 U.S.C. § 1002(3) (1988). The statute further defines the term "employee welfare benefit plan" to mean:

any plan, fund or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, *death* or unemployment. . . .

*Id.* § 1002(1) (1988) (emphasis added). In this case, the parties do not dispute that Brij's life insurance coverage is provided as part of an ERISA employee welfare benefit plan maintained by Colgate for the benefit of its employees, although a copy of Colgate's plan is not included in the record on appeal.

■ Section 514(a) of ERISA provides that the statute "shall supersede any and all State laws insofar as they may now or here-

after relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a) (1988).[3] It follows that "[i]n appropriate circumstances, courts may develop a federal common law under ERISA." *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1419 (2d Cir.1985) (citing *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1499 (9th Cir.1984)), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986)). In developing federal common law, furthermore, resort may be had to state law in a proper case. *See Royal Indemnity Co. v. United States,* 313 U.S. 289, 296–97, 61 S.Ct. 995, 998, 85 L.Ed. 1361 (1941); *Nachwalter v. Christie,* 805 F.2d 956, 959–60 (11th Cir. 1986) (ERISA); *Amato,* 773 F.2d at 1419 (same); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985) (same). As the Eleventh Circuit cautioned in *Nachwalter,* however:

> [E]ven when it is appropriate for a federal court to create federal common law, it may use state common law as the basis of the federal common law only if the state law is consistent with the policies underlying the federal statute in question; federal courts may not use state common law to re-write a federal statute.

805 F.2d at 959–60 (citations omitted).

The district court applied New York law in ruling for Rochelle, stating: "ERISA is silent on the matter of which party shall be deemed beneficiary among disputing claimants. Therefore, I may look to New York law." *Krishna,* 1992 WL 176633, at *3; *see also Tesch v. General Motors Corp.,* 724 F.Supp. 1251, 1253 (E.D.Wis.1989) (same), *rev'd on another ground,* 937 F.2d 359 (7th Cir.1991). The court then ruled that although New York law would not ordinarily allow the insured under a life insurance contract to change the beneficiary by a will, this rule does not control in an interpleader action. *Id.* at *3–4 (citing *Kane v. Union Mut. Life Ins. Co.,* 84 A.D.2d 148, 154, 445 N.Y.S.2d 549, 553 (2d Dep't 1981)). The district court explained:

> Since the formal beneficiary designation requirements are designed to protect the

insurance company, where the insurer removes itself from the proceedings and pays the proceeds into the court, there are no public policy reasons to require formal notice of change of beneficiary, and the will of the beneficiary [sic] may control.

As previously stated, the court then concluded that Brij's intention to disinherit Krishna and favor Rochelle was clear, and rendered summary judgment in favor of Rochelle.

We are not persuaded that New York law should be applied here. Although ERISA is indeed "silent on the matter of which party shall be deemed beneficiary among disputing claimants," *Krishna,* 1992 WL 176633, at *3, a number of cases have addressed the issue whether this situation warrants the application of state law to resolve such disputes. Most have ruled that it does not.

In *Metropolitan Life Insurance Co. v. Hanslip,* 939 F.2d 904 (10th Cir.1991), the decedent had named his wife as beneficiary under an ERISA life insurance policy, but divorced her prior to his death by suicide. The administrator of his estate sought the proceeds of the insurance policy, invoking an Oklahoma statute which provided that the divorce voided the designation of the former wife as beneficiary. The Tenth Circuit ruled in favor of the divorced wife, stating:

> The basic preemption provision of ERISA is deliberately expansive. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 508 (10th Cir.1991). Unless otherwise encompassed in the saving clause, any state law relating to any ERISA plan is preempted. Pursuant to this section,
>
> > A law "relates to" an employee benefit plan, in the normal sense of the phrase if it has a connection with or reference to such a plan. Under this "broad common sense meaning," a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

---

**3.** Section 514(b) states a number of exceptions to the general preemption rule of § 514(a); none of the exceptions apply in this case. *See* 29 U.S.C. § 1144(b) (1988 & Supp. I 1989).

*Ingersoll–Rand Co. v. McClendon,* [498 U.S. 133, 139], 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (citations omitted). *Because the designation of beneficiaries to this life insurance policy "relates to" the ERISA plan, the preemption provision applies. See Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1118–19 (10th Cir. 1991) (designated beneficiary's claim for wrongful denial of insurance proceeds is related to the plan); *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990) ("The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue.").

939 F.2d at 906–07 (emphasis added).

The Eleventh Circuit ruled similarly in *Brown v. Connecticut General Life Insurance Co.,* 934 F.2d 1193 (11th Cir.1991), holding that a second wife who was the named beneficiary of a deceased husband's ERISA life insurance policy was entitled to the proceeds despite a competing claim by the first wife premised upon the divorce decree that dissolved the first marriage. *Id.* at 1197.

In *McMillan v. Parrott,* 913 F.2d 310 (6th Cir.), *remanded on reh'g mem.,* 922 F.2d 841 (6th Cir.1990), a wife and husband had entered into a settlement in the course of their divorce by which they had divided their marital property, and each had waived "any and all" claims against the other. *See* 913 F.2d at 311. The decedent former husband, however, never changed the designation of his divorced wife as beneficiary under his ERISA plans. *See id.* The court ruled in favor of the divorced wife's claim to death benefits payable under the plans, reversing a contrary district court decision based on state law, and said: "The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue." *Id.* (citing *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 278 (7th Cir.) (in banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989)). The court also noted that "ERISA requires that a plan administrator discharge his duties 'in accordance with the documents and instruments governing the plan,'" *id.* (quoting 29

U.S.C. § 1104(a)(1)(D)), and that the plan documents called for appointment of beneficiaries in designations filed with the plan administrator. *Id.*

*MacLean v. Ford Motor Co.,* 831 F.2d 723 (7th Cir.1987), framed the issue to be determined as follows: "In this case, we must decide whether [ERISA] preempts state law governing testamentary transfers." *Id.* at 724. The court ruled in favor of preemption, rejecting a contention that ERISA plan assets should pass with the residue of the decedent's estate, rather than in accordance with the designation of beneficiary on file with the plan administrator. *Id.* at 726–28. This, of course, is precisely the situation presented by the instant appeal. The Seventh Circuit emphasized, *id.* at 728, that ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (1988). We note, however, that the ERISA plan in *MacLean* specified that: "Any designation of beneficiary under the Plan shall be controlling over any testamentary or other disposition. . . ." 831 F.2d at 724.

We cited *MacLean* as an example of appropriate ERISA preemption in *Aetna Life Insurance Co. v. Borges,* 869 F.2d 142 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), stating:

Another ... example is *MacLean v. Ford Motor Co.,* 831 F.2d 723 (7th Cir. 1987), which held that ERISA preempts state testamentary law to the extent that such law would require an ERISA plan to pay accumulated benefits to a testator's legatee, rather than to the beneficiary designated under the plan. The Seventh Circuit said, "When, as here, the terms of an employee pension plan under ERISA provide a valid method *for determining the beneficiary,* that mechanism cannot be displaced by the provisions of a will." *Id.* at 728 (emphasis added).

869 F.2d at 147 n. 4.

Only in *Tesch* was state law invoked to provide a supplementary rule for the designation of an ERISA beneficiary. The state law provision in that case provided in sub-

stance that "unless a designation of beneficiary is explicitly irrevocable, a policyholder may change the beneficiary without the consent of the previously designated beneficiary by any act that unequivocally indicates an intent to make the change." 724 F.Supp. at 1253. An inexplicit statement by the decedent to the plan administrator was deemed not to satisfy the requirement of an unequivocal indication of intent. *Id.* at 1253–54. In any event, *Tesch* essentially reinforces the federal rule favoring beneficiary designations filed with a plan administrator, and calls only for invoking state law to assist in formulating federal ERISA common law "as long as the state law is consistent with the purposes underlying ERISA." *Id.* at 1253 (citing *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 879 F.2d 249, 253 (7th Cir. 1989), *on reh'g,* 897 F.2d 275 (7th Cir.) (in banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

Considerations of public policy reinforce the precedents that would bar the use of New York law to settle the issue presented by this appeal. There is a strong interest in uniform, uncomplicated administration of ERISA plans, many of which function in a number of states. *See PM Group Life Ins. Co. v. Western Growers Assurance Trust,* 953 F.2d 543, 547 (9th Cir.1992). In this case, the Policy includes a clear provision calling for the filing of written designations to name or change a beneficiary. It would be counterproductive to compel the Policy administrator to look beyond those designations into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions.

Of course, the New York rule invoked by the district court in this case applies only when a plan administrator interpleads contending claimants and becomes a stakeholder. *See In re Estate of Jaccoma,* 142 A.D.2d 875, 877–78, 530 N.Y.S.2d 909, 910–11 (3d Dep't), *appeal denied mem.,* 73 N.Y.2d 703, 534 N.E.2d 329, 537 N.Y.S.2d 491 (1988). A plan administrator could therefore avoid the rule by not interpleading disputing claimants. It would not be useful, however, to discourage the use of interpleader or similar procedural devices in the ERISA context by attaching this distorting impact to their employment. *Cf. McMillan,* 913 F.2d at 311 (plan administrator sought declaratory judgment regarding proper beneficiary). Nor would it serve the cause of uniform administration of ERISA plans to adopt such a rule only for those ERISA cases in which New York law would be an appropriate recourse as a source of federal common law.

On the record presented on this appeal, we would be disposed to reverse and remand with instructions to enter judgment for Krishna. In the interests of caution, however, we will refrain from an explicit instruction to enter judgment to allow the parties to make further factual submissions in light of this opinion. We note, for example, that the record on this appeal contains only limited quotations from, rather than the full text of, the Policy, and does not include the underlying Colgate benefit plan.

We add, finally, that if we reached the issue posed by New York law, i.e., a more generalized investigation of Brij's intent on the question of the Policy beneficiary as a result of the Colgate/Equicor interpleader, we would nonetheless reverse and remand. " 'Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.' " *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989) (quoting *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977)); *see also Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 711 (2d Cir.1991) (collecting cases). Although there is strong evidence in this record to support the district court's conclusion that Krishna no longer enjoyed Brij's favor, we would regard the issue of Brij's intent as a matter to be resolved at trial, rather than by summary judgment.

## Conclusion

The order of the district court granting summary judgment to Rochelle is reversed;

and the case is remanded for further proceedings not inconsistent with this opinion.