Filed:  March 20, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 94-1592
(CA-93-3930-Y)

_____

Estate of Thomas Angelo Altobelli,

Plaintiff - Appellee,

versus

International Business Machines Corporation,

Defendant - Appellant.

_____

O R D E R

_____

The Court amends its opinion filed February 28, 1996, as follows:

On page 7 -- "Wilkinson, Circuit Judge, dissenting" is corrected to read "Wilkinson, Chief Judge, dissenting."

For the Court - By Direction

/s/ Bert M. Montague

_____
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ESTATE OF THOMAS ANGELO
ALTOBELLI,
<u>Plaintiff-Appellee,</u>

v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,
<u>Defendant-Appellant,</u>

and                                                                        No. 94-1592

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,
<u>Defendant,</u>

and

HELEN V. DIETSCH, formerly known
as Helen V. Altobelli,
<u>Third Party Defendant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-93-3930-Y)

Argued: October 31, 1995

Decided: February 28, 1996

Before WILKINSON, Chief Judge, and WIDENER and ERVIN,
Circuit Judges.

Affirmed by published opinion. Judge Ervin wrote the opinion, in which Judge Widener joined. Chief Judge Wilkinson wrote a dissenting opinion.

---

**COUNSEL**

**ARGUED:** John Mark Vine, COVINGTON & BURLING, Washington, D.C., for Appellant. Alan Barry Sternstein, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellee. **ON BRIEF:** Jeffrey G. Huvelle, Michael R. Bergmann, COVINGTON & BURLING, Washington, D.C., for Appellant.

---

**OPINION**

ERVIN, Circuit Judge:

International Business Machines Corporation ("IBM") appeals the award of benefits to the estate of a deceased employee under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (1988). We must determine whether an ERISA participant's ex-spouse can waive, in a separation agreement incorporated into a divorce decree, her interest as a beneficiary in pension-plan proceeds. We hold that she can, and did. Therefore we affirm.

I.

From October 13, 1969, until his death on June 14, 1993, Thomas Altobelli worked for IBM and participated in two IBM-sponsored employee pension benefit plans. Altobelli did not designate a beneficiary under either plan, but designated his ex-wife, Ms. Helen Dietsch, as the beneficiary of his IBM Group Life Insurance Plan. The pension plans provide that, if the participant does not designate a beneficiary, the default beneficiary is the person named in the life insurance plan.

Altobelli and Dietsch divorced on December 27, 1985. They incorporated into the divorce decree a Voluntary Separation and Property

2

Settlement Agreement, which provided that Dietsch surrendered any rights in Altobelli's IBM plans:

> "All of the following property is hereafter the sole and exclusive property of the Husband, and the Wife hereby waives and transfers to the Husband any interest that she may have in the property:

> * * *

> (g) Husband's IBM pension and other deferred compensation plans, if any."

Altobelli likewise surrendered any rights he had in Dietsch's IBM plans:

> "All of the following property is hereafter the sole and exclusive property of the Wife, and the Husband hereby waives and transfers to the Wife any interest that she may have in the property:

> * * *

> (g) Wife's IBM pension and other deferred compensation plans, if any."

Both parties signed the agreement and their signatures were notarized.

Altobelli did not designate a new beneficiary under either the pension plans or the life insurance plan. After he died, IBM notified his estate's representative that it intended to distribute the pension-plan proceeds to Dietsch, despite the separation agreement, because she still was the default beneficiary under the plans' terms. The estate responded by bringing this action for a Declaratory Judgment, claiming that Dietsch had waived her interest in both the life insurance proceeds and the pension-plan proceeds. Dietsch intervened as a defendant, but contested only the estate's claim to the life insurance proceeds. Agreeing that the facts were undisputed, the parties moved for summary judgment.

3

The district court determined that Dietsch was entitled to the life insurance proceeds, but that she had waived her interest in the pension-plan proceeds. It awarded the pension-plan proceeds to the estate. The estate elected not to appeal the disposition of the insurance proceeds, and Dietsch does not contest the finding of waiver regarding the pension-plan proceeds. But IBM timely appealed, arguing that it must administer the pension plans only according to their terms, without regard to the separation agreement.

II.

Summary judgment is proper if "there is no genuine issue as to any material fact." E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Since both parties agree that the facts are undisputed, summary judgment is appropriate in this case. This Court reviews a grant of summary judgment de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

III.

The issue before this court is whether a divorced spouse, who was the designated beneficiary under her ex-husband's ERISA plan, effectively waived her benefits via a marital settlement agreement that was incorporated into a divorce decree. ERISA does not address this topic directly, so federal courts may resolve it by developing federal common law. See Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 562 (4th Cir. 1994).

IBM presents two arguments to support its position that the waiver should be ineffective. First, it notes that one of ERISA's purposes is to facilitate "uniform, uncomplicated administration" of pension plans. Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir. 1993). ERISA expressly requires that the plan be administered "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D) (Supp. II 1990). IBM interprets that requirement to mean that a plan administrator should be required to look only to the plan to discharge his duties. Second, IBM contends that the anti-alienation clause required by ERISA prohibits a plan beneficiary from waiving her benefits. ERISA mandates that "[e]ach pen-

4

sion plan shall provide that benefits under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (1988). The IBM pension plans comply with that provision.

Several other circuits have addressed the issue of waiver by a beneficiary. On facts very similar to this case, the Seventh Circuit decided that a nonparticipant beneficiary can waive her benefits through specific language in a divorce settlement. Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 280-81 (7th Cir.) (en banc), cert. denied, 498 U.S. 820 (1990). The anti-alienation clause, the court determined, is a spendthrift device intended to ensure that employees' accrued benefits are available for retirement: "These provisions focus on the assignment or alienation of benefits by a participant, not the waiver of a right to payment of benefits made by a designated beneficiary." Id. at 279.

The Eighth Circuit did not address the anti-alienation clause, but held that an ex-spouse can waive pension benefits in a divorce settlement if the waiver specifically refers to and modifies the beneficiary interest. Lyman Lumber Co. v. Hill, 877 F.2d 692, 693-94 (8th Cir. 1989). The Tenth Circuit agreed, holding that the beneficiary designation on file only controls absent a divorce decree dictating otherwise. Metropolitan Life Ins. Co. v. Hanslip, 939 F.2d 904, 907 (10th Cir. 1991).

Two circuits disagree. The Sixth Circuit, like the Eighth and Tenth Circuits, did not address the anti-alienation clause, but held that a divorce settlement cannot effectively waive pension plan benefits because the plan administrator is to consider only the designation on file. McMillan v. Parrott, 913 F.2d 310, 311-12 (6th Cir. 1990). To look at other documents, it believed, would be unnecessarily burdensome. Id.; accord Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir. 1993) ("It would be counterproductive to compel the Policy administrator to look beyond those designations into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions.").

We agree with the Seventh Circuit that the anti-alienation clause does not apply to a beneficiary's waiver. As the Supreme Court has noted, the purpose of the clause is "to safeguard a stream of income

5

for pensioners (and their dependents . . . )." <u>Guidry v. Sheet Metal Workers Nat. Pension Fund</u>, 493 U.S. 365, 376 (1990). To bar a waiver in favor of the pensioner himself would not advance that purpose.

We also agree that giving effect to a waiver contained in a domestic relations order does not burden plan administrators in a manner violative of ERISA. ERISA was designed to simplify plan administration as much as possible, but it still requires administrators to consider divorce decrees to determine whether they are Qualified Domestic Relations Orders,* which are enforceable. 29 U.S.C. § 1056(d)(3)(G)(i) (1988). Thus, as the Seventh Circuit determined, "[n]o such additional burdens will be imposed" by enforcing waivers. <u>Fox Valley</u>, 897 F.2d at 282.

In this case, each party clearly intended to relinquish all interests in the pension plans of the other. Congress's provision for QDROs reveals that, in some situations, it deems the intent of the parties sufficiently important to override the policy of simplified administration. Because enforcement of a divorce agreement's specific waiver of ERISA pension-plan benefits would require no marginal infringement of that policy beyond the infringement already necessitated by the QDRO provision, and since ERISA does not directly address the issue, we join the Seventh Circuit in holding as a matter of federal common law that such a waiver is to be given full effect.

---

* We refer to QDROs only to point out that there are situations when ERISA requires plan administrators to consult documents outside the plans themselves. The estate asks us to address them in greater depth, arguing that the divorce order in this case was a QDRO. IBM responds that the estate did not make that argument below and thus is precluded from doing so here. We will not consider an issue not raised below absent "exceptional circumstances." <u>United States v. One 1971 Mercedes-Benz</u>, 542 F.2d 912, 915 (4th Cir. 1976); <u>accord</u>, <u>e.g.</u>, <u>Maryland Dep't of Human Resources v. Department of Agriculture</u>, 976 F.2d 1462, 1473-74 (4th Cir. 1992); <u>Bakker v. Grutman</u>, 942 F.2d 236, 242 (4th Cir. 1991) (requiring "denial of fundamental justice"). There certainly are no exceptional circumstances in this case, since our decision on other grounds favors the estate, so we do not address whether the order was a QDRO.

6

IV.

Dietsch specifically waived, in her marital settlement agreement, any interest she had in her husband's pension plans. Because we hold that her waiver is effective, we affirm the district court's order awarding the pension benefits to Altobelli's estate.

AFFIRMED

WILKINSON, Chief Judge, dissenting:

The majority decides this case on grounds of federal common law when it need look no further than the terms of the statute. As we have explained, "resort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA." Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992). Here, the equities of the majority's disposition seem tempting, but ERISA's provisions compel a contrary outcome. Fearing the long term consequences of replacing rules of Congress with our own, I respectfully dissent.

ERISA requires that plan administrators perform their obligations "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). This simple statutory directive requires that we heed the beneficiary designation on file with IBM's pension plans. There is no question that Helen Dietsch is the designated beneficiary in those plans. While Altobelli never expressly named a beneficiary, the plan documents stipulate that absent specification "the beneficiary shall be deemed to be the beneficiary under the IBM Group Life Insurance Plan." The beneficiary under Altobelli's life insurance plan, and hence also his pension plans, is Helen Dietsch.

IBM's pension plans allow participants to designate or change a beneficiary: "Such designation or change of designation shall be in writing in a form satisfactory to the Plan Administrator and shall be submitted to the Company's Payroll Department and shall be effective upon receipt by that Department." Following Altobelli's divorce from Dietsch, however, he did not specify a new beneficiary under his

7

pension plans, nor did he remove Dietsch as the beneficiary under his life insurance plan. Thus, according to the "documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), the beneficiary of Altobelli's pension plans is and always has been Helen Dietsch. In short, the "clear statutory command, together with the plan provisions, answer the question; the documents control," McMillan v. Parrott, 913 F.2d 310, 311-12 (6th Cir. 1990), and those documents name Dietsch.

Sound reasons support the statutory rule of assigning benefits in accordance with plan documents. Heeding "the federal rule favoring beneficiary designations filed with a plan administrator" promotes the "strong interest in uniform, uncomplicated administration of ERISA plans." Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir. 1993); see also Fox Valley & Vicinity Construction Workers Pension Fund v. Brown, 897 F.2d 275, 283 (7th Cir.) (en banc) (Easterbrook, J., dissenting), cert. denied, 498 U.S. 820 (1990). "[R]eliance on the face of written plan documents" also furthers another of ERISA's central goals, that of "enabling beneficiaries[and employees] to learn their rights and obligations at any time." Curtis-Wright Corp. v. Schoonejongen, 115 S. Ct. 1223, 1230 (1995). Strict adherence to § 1104(a)(1)(D) ensures that all interested parties, including participants, beneficiaries, and plan administrators, can identify their rights and duties with certainty, a primary objective of ERISA. Parrott, 913 F.2d at 312. This in turn limits costly disputes over the effect of outside documents on the distribution of plan benefits. See id.

Because the majority ignores the beneficiary designation on file with the IBM plans, its approach compromises the principles underlying § 1104(a)(1)(D). Forcing plan trustees to examine a multitude of external documents that might purport to affect the dispensation of benefits frustrates the statutory goals of efficiency in administration and certainty in expectations. See Krishna, 7 F.3d at 16. The costs associated with these inefficiencies might well "lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987). And uncertainties over the interpretation of external documents will produce conflicts among parties asserting rights to plan benefits, miring plan assets in expensive litigation.

8

These concerns are not alleviated by construing the majority's ruling to apply only to beneficiary waivers in divorce decrees. Interpreting those decrees will cause problems for plan administrators. For instance, waiver provisions are often sweeping in their terms, leaving their precise effect on plan benefits unclear. See Equitable Life Assurance Soc'y v. Stitzel, 445 A.2d 523 (Pa. Super. 1982) (waiver of "any and all claims . . . of whatsoever kind or nature" found not to waive claim to beneficiary interest in life insurance plan). Even when facing waiver terms that reference the affected plans, plan administrators will have to assess whether the waiver is executed with sufficient specificity to trump the beneficiary designation in the plan documents. Courts have reached contradictory conclusions in such situations. Compare Lyman Lumber Co. v. Hill, 877 F.2d 692 (8th Cir. 1989) (term stating that husband "shall have as his own, free of any interest of [his wife], his interest in the profit-sharing plan of his employer" held not to waive wife's beneficiary interest in plan), with Fox Valley, 897 F.2d at 275 (term stating that the parties "waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party" held to waive wife's beneficiary interest in pension plan). Forcing plan trustees to make such determinations will only complicate plan administration and will leave all parties unsure of their rights and obligations. The better rule is the one dictated by the statute -- to honor the designations on file with the plan documents.

The majority contends that examining the enforceability of waiver provisions in divorce decrees will not unduly compromise plan administration because plan trustees already must review divorce decrees to determine whether they constitute Qualified Domestic Relations Orders ("QDROs").* 29 U.S.C. § 1056(d)(3)(G)(i). I cannot

_____

* QDROs were designed as a narrow exception to ERISA's general prohibition on alienation or assignment of benefits, 29 U.S.C. § 1056(d)(1), to allow the attachment of an employee's pension benefits to satisfy his or her family support obligations. See S. Rep. No. 575, 98th Cong., 2d Sess. 18-19, reprinted in 1984 U.S.C.C.A.N. 2547, 2564-65. The divorce decree at issue here is not a QDRO. A QDRO exists when, among other things, a participant assigns benefits to an "alternate payee," defined as a "spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(K). Here the participant did not attempt to assign his benefits to his former spouse or any other alternate payee; rather, the former spouse attempted to waive her rights in favor of the participant.

9

agree. Congress was concerned with the very problems that face us here when it defined the requirements to establish a QDRO, and it took pains to assure that enforcement of QDROs would not produce inefficiency and uncertainty. To constitute a QDRO, a divorce decree must "clearly specif[y]" the identity of any benefit recipient, the particular plans affected, and the exact manner of calculating the amount of benefits to be paid. See 29 U.S.C. § 1056(d)(3)(C). "The requirement of clear specification is designed to spare the plan administrator from litigation-fomenting ambiguities as to who the beneficiaries designated by the divorce decree are," Metropolitan Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1084 (7th Cir. 1994), and to ensure that "the decree provides an administrator with information needed to process a claim efficiently so that assets are preserved and beneficiaries' interests are served," Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114, 1122 (10th Cir.), cert. denied, 502 U.S. 1020 (1991). ERISA also requires that all plans develop written procedures for determining whether a divorce decree is a QDRO. See 29 U.S.C. § 1056(d)(3)(G)(ii). The statute contains no similar precautions to assure efficiency in plan administration with respect to non-QDRO divorce decrees.

In sum, I agree with the Second and Sixth Circuit's approach to this question. Krishna, 7 F.3d at 11; Parrott, 913 F.2d at 310. Plans should be administered "in accordance with the plan documents," not extraneous ones. What seem like small equitable steps in a particular case may lead to large administrative headaches in the aggregate. IBM sought nothing more than to administer its plan as the statute and the plan require. I am surprised that this court would prohibit it from doing so. I would reverse the judgment.

10