184 So.2d 478 (1966)
Sylvia W. DIXON, As Legal Guardian for James M. Dixon, Jr., a Minor, Appellant,
v.
Ralph DIXON, Appellee.
No. 5592.
District Court of Appeal of Florida. Second District.
March 9, 1966.
Rehearing Denied April 5, 1966.
*479 Charles R. Mayer, of Mayer & Breathitt, Lakeland, for appellant.
R.B. Crawford, Jr., Bartow, for appellee.
SHANNON, Acting Chief Judge.
This is an appeal by the defendant-cross-claimant from a final decree in an interpleader action brought by the plaintiff insurance company. The appellee here was the cross-defendant below. The suit involves the determination of the rights to the proceeds of a life insurance policy.
The decedent was James M. Dixon, an employee of Virginia-Carolina Corporation. His first wife was Virginia Dixon, by whom he fathered two daughters. Dixon divorced Virginia and married Sylvia Dixon, the appellant, by whom a son was born, named James M. Dixon, Jr. This marriage also ended in divorce in 1962, and a part of the final decree was as follows:
"That Defendant, James Matthew Dixon, is hereby ordered to maintain and keep current with his employment any and all policies on his life, which such policies shall be made payable to the minor child herein."
Dixon was employed by Virginia-Carolina when the above provision was written. The group plan then in effect was with Metropolitan Life, and the named beneficiary on the policy was the second wife, Appellant Sylvia Dixon. According to the provisions of the decree, James M. Dixon, Jr., should have been substituted as beneficiary, but he never was. Possession of the insurance certificates from Metropolitan remained with Sylvia Dixon.
Following the divorce of James and Sylvia, the Virginia-Carolina Corporation changed its group insurance carrier from Metropolitan to Provident Life. In connection with this change, in which the Metropolitan policies apparently became void, James Dixon caused his named beneficiary to become Ralph Dixon, his brother. The lower court found that the decedent intended to create a trust of the insurance proceeds, for the use and benefit of his three children in equal shares (two girls by Virginia, and James, Jr., by Sylvia), and that Ralph Dixon was the trustee. James Dixon died by accidental means, and both Sylvia Dixon, as guardian for James, Jr., and Ralph Dixon, as named beneficiary, claimed title to the $8,000.00 proceeds from the Provident policy. The insurance company paid the proceeds into the court registry and brought an interpleader action. The chancellor found for Ralph Dixon, who agreed to hold and distribute the proceeds to the three minors, and Sylvia Dixon appeals.
The main point involved is whether the provision in the final decree of divorce between James and Sylvia, requiring James to "maintain and keep current with his employment any and all policies on his life which such policies shall be made payable to the minor child * * *," operated to vest in James, Jr., an indefeasible interest in the insurance contract written by Provident as a substitute for the policy then in effect.
The chancellor's final decree states that the case of Cadore v. Cadore, Fla. *480 1953, 67 So.2d 635, controls the situation presented, and on the basis of that case concluded that the stipulation and divorce decree did not operate to divest the decedent of ownership and control of the insurance policy. Before embarking on a discussion of Cadore, we pause to acknowledge that the principle of stare decisis requires us to follow the precedent set by the Supreme Court of this State. Nevertheless, we do not feel that the holding in Cadore, on analogous but distinguishable facts, was intended to have the effect attributed to it by both the chancellor below and the appellee here.
In Cadore the stipulation incorporated into the divorce decree provided that the husband, who was then insured under a designated policy of which the wife was beneficiary, was to effect a change of beneficiary from the wife to the three children of the parties. This provision was complied with. The husband remarried, and subsequently recharged the beneficiary of the policy from the three children to his second wife, who for some years prior to his death had paid the premiums. Under these facts the Supreme Court held that the second wife, rather than the children of the first marriage, was entitled to the insurance proceeds. The crux of the court's reasoning was stated as follows:
"Cadore complied with the terms of the stipulation and the final decree and named the children beneficiaries. Such change of beneficiary was revokable. The insured still had the right under the terms of the policy to change the beneficiary at will. He had the right to assign the policy or to accept a cash settlement from the insurance company, or the right not to pay any further premiums and thereby suffer a cancellation of the policy. * * *"
The Cadore decision, however, does not control in the instant case because of the strikingly different provisions of the stipulation and decree. The decedent here was required "to keep current any and all policies in connection with his employment." Thus he failed to retain those crucial incidents of ownership and control which the Supreme Court found that the deceased in Cadore had retained. The policies here could not be allowed to lapse (except by the insured's leaving his employment), and were required to be made and kept payable to his son, James, Jr. This was a continuing obligation. It could not be discharged by making one change of beneficiary; it could not be totally disregarded later by revoking the beneficiary or by any other change. Unlike the Cadore situation, the policy here had no cash or loan value which could have been liquidated by the insured; this insurance was, in effect, a term policy which only became operative upon death. In addition, there was no actual policy ever issued by the carrier, and the only apparent evidence of the policy, the company's certificate of insurance, was in the possession of the beneficiary's guardian, rather than in the possession of the deceased as in Cadore.
Appellee contends that the deceased's failure to name James, Jr., as beneficiary on the Provident policy bars appellant's recovery, because of the failure to comply with the express terms of the policy which required that the company be notified in writing of any change in beneficiary. We do not agree. In Miller v. Gulf Life Insurance Co., 1943, 152 Fla. 221, 12 So.2d 127, the Supreme Court held that there had been a valid parole gift of the life insurance policy and the donee was entitled to the proceeds upon the death of the insured even though the decedent's estate was the named beneficiary and there had been no notification of change of beneficiary as required by the policy provisions. The court distinguished the owner's right to make a valid gift of a policy as an incident of ownership over which the insurance company had no control from the provisions for change of beneficiary established by the contract, which provisions would be binding on the parties.

*481 "Upon a valid gift of such policy having been made, absolute title and ownership vests in the donee; and thereafter the donor has no power or control over it. A beneficiary has no such present interest in the policy. His is only an inchoate right to the proceeds, subject to be divested at any time during the lifetime of assured, by transfer, assignment, or change of beneficiary." Miller, supra, 152 Fla. at 227, 12 So.2d at 130.
Thus the question presented in the instant case is whether the stipulation and decree amounted to a divesting of the incidents of ownership similar to a gift or only a requirement for change of beneficiary, revocable at will.
We hold that the terms of the stipulation were so encompassing as to amount to a surrender of the essential incidents of ownership. If a person may make a parole gift of his policy ownership, a fortiori he may, by written stipulation concurrent with the bargaining inherent in a divorce settlement, similarly divest himself of his ownership interest in an insurance policy.
As a practical consideration the insurance company here has expressed its indifference to which party is to receive the proceeds, and has paid them into the court registry for eventual disbursement to those parties deemed entitled by the court. This action by the insurance company may be construed as a waiver of any policy provisions regarding non-assignability or change of beneficiaries, since these provisions are for the company's own protection and are enforceable or not at its election. Miller v. Gulf Life Insurance Co., supra; Stepson v. Brand, 213 Miss. 826, 58 So.2d 18, 33 A.L.R.2d 267.
It is of no significance that the employer changed insurance underwriters from Metropolitan, which provided the policy in force when the stipulation was signed, to Provident, the carrier with whom the decedent named his brother as beneficiary. So far as decedent's obligation under the stipulation was concerned, he had no power in contemplation of law to name anyone other than his son, James, Jr., as beneficiary. There was no consideration given by anyone for the unauthorized change of beneficiary, no rights of third parties intervened and no person other than the deceased (and his employer) paid the premiums. Under these circumstances we will not allow the obvious intent of the divorce decree to be casually disregarded under the guise of insurance policy provisions designed to fit other purposes. It would be futile, as we glean from the record, to remand the appellant to some breach of contract action against this decedent's estate. Moreover, we conclude that the present action, brought in chancery, is an altogether appropriate vehicle for the appellant to assert equitable title to the proceeds. See Yates v. Yates, 272 F.2d 52 (5th Cir.1959).
Appellee and the chancellor were both concerned over the failure of Sylvia Dixon to have taken some action to compel the decedent to have James, Jr.'s, name substituted for her own as beneficiary. This is immaterial. The rights of James, Jr., as equitable owner, would in no way be affected by, nor will we attribute to him,`any possible laches which may be chargeable against Sylvia Dixon individually. Sylvia's knowledge of any arrearages in support money owed to the former wife were likewise irrelevant to the issue of ownership of this policy.
Therefore, we hold that the lower court erred in failing to decree that the appellant, as legal guardian for James Dixon, Jr., was entitled to the entire proceeds of the policy.
The appellant has raised another point, in which it is contended that the clerk of the lower court disbursed funds to the appellee prior to the expiration of the time for filing a petition for rehearing. However, there is no order or other indication in the record that such disbursement was *482 ever made. The record reveals a motion by appellant for supersedeas to stay the final decree, filed on the 10th day following the rendition of the final decree, but no ruling on this motion appears. The appellant contends that it was then brought to the attention of the lower court that the funds had been disbursed, but that the chancellor, in an order not reduced to writing, declined to order the return of the funds to the registry regardless of whether supersedeas were posted.
We observe that Fla.R.C.P. 3.15, 31 F.S.A. provides that executions on decrees for money shall issue and be governed by the law relating to money judgments. We construe this to mean that it would be improper, absent special order of the court, to order the disbursement of any funds awarded by an equity court until the expiration of time in which petition for rehearing could be filed. See Fla.R.C.P. 2.13 and Note 17, U.Fla.L.Rev. 269, 283 (1964). Cf. Cocalis v. Cocalis, Fla.App. 1958, 103 So.2d 230, 233. (Equity decree does not become final and absolute until after time for rehearing has expired). The appellant in this case filed his notice of appeal on the 10th day following the rendition of the final decree, and thereby became entitled, as a matter of right, to stay execution of the judgment upon the posting of supersedeas bond. F.A.R. 5.3 and F.A.R. 5.5, 31 F.S.A. Since we have reversed the final decree, the question of premature disbursement may become vital on remand. At this juncture, however, we have nothing to review on this issue.
As previously stated, we found the chancellor erroneously applied the Cadore case, as a result of which, he concluded the deceased retained the power to change beneficiaries. We therefore reverse.
Reversed.
HOBSON, J., and HEWITT, ROBERT S., Associate Judge, concur.