Billie L. HUDSPETH, Appellant,

v.

Christine STOKER, Appellee.

No. 16740.

Court of Appeals of Texas, San Antonio.

Nov. 17, 1982.

Rehearing Denied Dec. 14, 1982.

Van G. Hilley, San Antonio, for appellant.

Richard D. Knutson, San Antonio, for appellee.

## OPINION

Before CADENA, C.J., and CANTU and BASKIN, JJ.

BASKIN, Justice.

This is an appeal from an interpleader action originally filed by the Great American Reserve Insurance Company (Great American) against Billie Hudspeth, appellant, and Christine Stoker, appellee, in order to determine the proper distribution of the proceeds of a $20,000.00 insurance policy on the life of Edward G. Hudspeth. After a bench trial the court awarded a $15,000.00 disbursement of the proceeds to Stoker as trustee for Joel Patrick Hudspeth, Terrill Ann Hudspeth, and Ann Elizabeth Hudspeth, and further ordered that the remaining $5,000.00 be paid to Billie Hudspeth. The judgment specifically recited that the court was imposing a constructive trust upon the $15,000.00 award.

The basic facts of the case are not in dispute. Christine Stoker was married to Edward G. Hudspeth on April 11, 1946, and the marriage lasted until January 31, 1969, when the couple obtained a divorce in Bexar County. As a part of the property settlement agreement, which was incorporated into the divorce decree, the parties agreed that Mr. Hudspeth would continue to make payments on group life insurance policy number G 6395, with a face value of $15,000.00. The policy was obtained from Great American by the Harlandale Independent School District (HISD), Mr. Hudspeth's employer. The judgment made the proceeds of the policy on Hudspeth's life payable to Christine Hudspeth as trustee for the aforementioned children. The property settlement agreement stated in pertinent part:

Further the parties covenant and agree to execute any and all necessary legal documents to affect the following insurance benefits provisions and to each continue the payment of premiums on the policies on their respective lives:

a. Insurance on the life of EDWARD GLENN HUDSPETH with Great American Reserve Life Insurance Company, Policy No. *G 6395,* in the face amount of $15,000 shall be made payable to the Plaintiff, CHRISTINE HUDSPETH as Trustee for JOEL PATRICK HUDSPETH, TERRILL ANN HUDSPETH and ANN ELIZABETH HUDSPETH, share and share alike, and that the Plaintiff, CHRISTINE HUDSPETH, shall be named owner of said Policy in said capacity.

Pursuant to a decision by the school district, the policy provided by Great American was terminated on October 1, 1972, and a group policy was purchased from another carrier. A total of three carrier changes was made before Mr. Hudspeth's death. At the time of Mr. Hudspeth's death on July 17, 1979, the group life insurance carrier was again Great American, and the coverage had been increased to $20,000.00. This litigation concerns the distribution of the proceeds of the new Great American policy number 60484, certificate number 617.

At trial, Warren Shows, assistant supervisor for fiscal affairs for HISD and the chairman of the committee responsible for procuring the group policy for the school district, testified that each carrier wrote a distinct and separate policy. Shows also stated that the decision to change insurance companies rested solely within the discretion of the committee and that employees, such as Hudspeth, could not continue the group coverage once the policy had been terminated by the school district.

After Hudspeth's death, Mrs. Stoker made a demand for the proceeds under the policy but discovered that the original policy was no longer in effect. She also learned that Mr. Hudspeth, who had married Billie Hudspeth after his divorce, had changed the beneficiary on the current policy to his second wife. Billie Hudspeth, who was married to Hudspeth at the time of his death, also filed a claim for the proceeds, thus prompting Great American to file this interpleader action.

In her first point of error, appellant maintains that the trial court erred in imposing a constructive trust in favor of appellee on $15,000.00 of the proceeds from the current policy because there is no evidence of all of the required elements necessary to impose a constructive trust. Appellant maintains by her second point of error that appellee's proper cause of action, if any, is a breach of contract action against the estate.

A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. An express agreement between the parties is not needed to create a constructive trust, rather, "[i]t is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 405 (1960).

In order to justify imposing a constructive trust on property, fraud, either actual or constructive, must be present. *Talley v. Howsley,* 142 Tex. 81, 176 S.W.2d 158, 160 (1943). Actual fraud involves dishonesty of purpose or intent to deceive, while constructive fraud usually involves a breach of trust or confidential relationship which equity decrees worthy of protection. *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964). Confidential relationships may arise not only from technical fiduciary relationships, but also from "moral, social, domestic or purely personal relationships." *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962). The Supreme Court, in *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951), stated the rule as follows:

While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, *and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fi-*

*duciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is moral, social, domestic or merely personal one.* (Emphasis by Supreme Court).

*Id.* 237 S.W.2d at 261.

■ There are no findings of fact or conclusions of law filed in the instant case. When reviewing a bench trial in which there is a complete statement of facts, but no findings of fact or conclusions of law are requested or filed, we must affirm the judgment if it can be sustained on any legal theory finding support in the evidence. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex. 1977); *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex.1968).

Appellant places much emphasis on *Rindels v. Prudential Life Insurance Co. of America,* 83 N.M. 181, 489 P.2d 1179 (1971) in urging this court to reverse and render. In *Rindels,* the husband and wife executed a settlement agreement pursuant to their divorce similar to the agreement in the instant case. Mr. Rindels agreed to maintain his present life insurance policy setting out the minor children as beneficiaries. Mr. Rindels remarried and shortly thereafter, ended his employment with the company carrying his group life insurance. His coverage under that group policy terminated automatically, and Rindels did not obtain another life insurance policy until he secured a new position with a different employer nearly one hundred days later. Mr. Rindels named his second wife as the beneficiary under the new policy.

In holding that the minor children take nothing, the court relied heavily on the fact that the second policy was obtained as a result of his employment with a different company and not merely a change in underwriters by the same employer. The court concluded that the change in beneficiaries at the time of the coverage under the second group policy did not constitute an attempt to change beneficiaries of the original policy referred to in the divorce decree.

We therefore find *Rindels* distinguishable on its facts and decline to predicate reversal on that case.

We have been unable to find any Texas case directly on point with the facts of the case at bar. In *Dixon v. Dixon,* 184 So.2d 478 (Fla.App.1966), the Florida court dealt with a fact situation similar to the instant case. James and Sylvia Dixon obtained a divorce decree which required Dixon to maintain and keep current with his employment any and all policies on his life which were payable to his minor child as beneficiary.

Following the divorce, Dixon's employer changed insurance carriers and the initial insurance policy became void. Dixon then named his brother Ralph as beneficiary in the new policy, contrary to the explicit terms of the settlement agreement.

The court awarded the proceeds of the second policy to the child as set out in the divorce decree, holding that the decree amounted to a surrendering of the essential incidents of ownership regarding the policy. The court further found it to be of no significance that the employer changed carriers. So far as Dixon's obligations were concerned, the court held that he had no power in contemplation of law to name anyone other than his son, James, Jr., as beneficiary. The court refused to allow the obvious intent of the parties witnesses by the decree to be circumvented by other insurance policy provisions designed for other purposes.

■ The property settlement in the instant case was also made a part of the divorce decree. The agreement specifically provided for the amount of insurance to be provided as well as the policy involved. Like the court in *Dixon,* we find no legal significance in the change of carriers herein. Hudspeth made no attempt to change employers, merely going through the formalities and paperwork necessitated when HISD changed carriers. The school district's decision to change carriers has no legal relevance to Hudspeth's obligations under the divorce decree.

It would be manifestly unfair if this change in carriers permitted Hudspeth to

avoid his obligations and defeat the equitable rights of the children.[1] Hudspeth agreed to designate certain beneficiaries and thus surrendered his right to change beneficiaries under this policy as part of his consideration in executing the property settlement agreement. Hudspeth's actions were in direct conflict with his signed agreement and with the decree of the court. By designating a new beneficiary on his group life insurance policy he thwarted the terms of the property settlement agreement incorporated into the divorce decree relating to the life insurance proceeds. Hudspeth's action was a violation of his legal duty under the decree, and the court was justified in imposing a constructive trust upon the proceeds. *See Fitz-Gerald v. Hull, supra; Roberts v. Roberts,* 560 S.W.2d 438, 440 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

We therefore hold that the trial court did not err in imposing a constructive trust upon $15,000.00 of the proceeds from the policy in view of the constructive fraud upon Stoker. Point of error one is overruled.

Since we have determined that the trial court properly imposed a constructive trust upon $15,000.00 of the life insurance proceeds, we overrule appellant's point of error two.

■ Under the explicit language of the agreement, the remaining $5,000.00 cannot be said to belong to either the children or Christine Stoker, and counsel for appellant acknowledged this fact at oral argument. The trial court correctly awarded the remaining $5,000.00 to appellee.

The judgment is affirmed.

---

1. This is not a case like *Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), where the Supreme Court held that a specific federal statute entitled a policy holder to designate his second wife as beneficiary despite attempts under state law to interfere with that right through the use of the constructive trust. Sergeant Ridgway's actions were authorized by federal law and Congress had specifically exempted policy proceeds from attachment or seizure.