EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Interpleader Plaintiff,

v.

Nancy W. CRYSLER, Defendant–Appellee,

Phyllis A. Crysler, Defendant–Appellant.

No. 94–4024.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1995.

Decided Sept. 29, 1995.

Richard E. Holiman, Little Rock, AR, argued, for appellant.

John Shamburger, Little Rock, AR, argued, for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

This is an interpleader action to determine who is entitled to the proceeds of a life insurance policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The decedent's widow claims as his last designated beneficiary under the policy, while his former wife claims under a divorce decree that allegedly prohibited beneficiary changes. The district court granted summary judgment to the widow on the ground that the former wife's claim is barred by ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). Concluding that this provision does not apply to the welfare benefit plan at issue, we remand for further proceedings.

## I.

Austin Crysler and Phyllis Crysler divorced on March 1, 1983. Paragraph 13 of the divorce decree provides that Austin "shall maintain [Phyllis] as irrevocable beneficiary on the $35,000 term life insurance policy with Equitable, so long as he is obligated to pay alimony to [Phyllis]." This term life policy was issued by The Equitable Life Assurance Society ("Equitable") as part of an employee welfare benefit plan maintained by Austin's employer, Mountain States Telephone and Telegraph Company (now part of U.S. West, Inc.). U.S. West administers the benefit plan. The policy's summary description states:

[Y]ou may change your beneficiary at any time. . . .

Your *Basic* coverage—and *Supplementary,* if any—is payable to your named beneficiary or beneficiaries in the event of your death from any cause.

After the divorce, Austin married Nancy Crysler. Despite paragraph 13 of the divorce decree, Austin changed the designated beneficiary of his Equitable group life policy several times after 1983. When Austin died in August 1993, Nancy was the designated primary beneficiary, and U.S. West's Benefit Department sent her a letter to that effect. Before Equitable distributed the policy proceeds, however, Phyllis advised U.S. West and Equitable of the 1983 divorce decree and demanded payment of Austin's $45,000 "basic" death benefit.

Nancy then sued Equitable in Arkansas state court to recover the entire death benefit. Faced with conflicting claims to the basic benefit,[1] Equitable filed this interpleader action in the district court, alleging that the state court had no jurisdiction over Phyllis, a New Mexico resident, and depositing the policy proceeds into court. The district court accepted jurisdiction, *see* 28 U.S.C. § 1335, and dismissed Equitable.

Phyllis and Nancy then filed cross-motions for summary judgment. Both conceded that ERISA governs their claims for benefits under the U.S. West benefit plan. Phyllis argued that ERISA does not expressly resolve this dispute and urged the court to apply federal common law and hold that the divorce decree affords her an enforceable "vested equitable interest" in the policy proceeds. Nancy argued that the divorce decree is preempted by ERISA, that Phyllis's claim is in any event precluded by ERISA's anti-alienation provision, and therefore that Nancy, as the designated policy beneficiary, must prevail.

The district court granted summary judgment to Nancy. The court reasoned that ERISA's anti-alienation provision applies to welfare benefit plans as well as to pension plans. Therefore, Austin's plan benefit must be paid to his designated beneficiary unless the divorce decree purporting to affect alienation is a qualified domestic relations order ("QDRO") under 29 U.S.C. § 1056(d)(3)(A).[2] Because the Cryslers' divorce decree does not qualify as a QDRO, the court concluded that Nancy must prevail even though the "equities ... lie with Phyllis." Phyllis appeals, raising issues of law that we of course review *de novo.*

## II.

Prior to ERISA, life insurers faced with conflicting claims to death benefits commonly employed the interpleader device to bring the contending claimants to state or federal court, where the claimants' dispute would be resolved under state law, with the insurer playing the passive role of stakeholder. *See generally* 20 Appleman, *Insurance Law & Practice* §§ 11311–16 (1980). Many of these disputes grew out of marital divorces. *See* Annotation, 31 A.L.R.4th 59 (1984). The issues were not easy, but the law to be applied was reasonably discernable to attorneys representing insurers and claimants.

Unfortunately, ERISA drastically altered this landscape, introducing esoteric legal issues like preemption and antialienation that left many practitioners bewildered. And federal courts, properly preoccupied with the statutory complexities of ERISA, often seemed to ignore an important task that had been performed, if not perfectly, at least efficiently, under state law—the fair resolution of conflicting, non-frivolous claims to plan benefits. Congress surely did not intend this confusion. If it is too late to make ERISA benefit cases analytically simple, our aim is at least to make the analysis more practical and better understood.

1. ERISA's anti-alienation provision does not bar Phyllis's claim. We deal

---

1. Before his death, Austin's basic coverage had increased from $35,000 to $45,000. He had also purchased supplemental coverage providing an additional $68,000 death benefit. Phyllis's claim under the divorce decree is limited to the $45,000 basic benefit.

2. QDROs were added to the ERISA lexicon by the Retirement Equity Act of 1984. Our disposition of this case makes it unnecessary to probe the inner workings of a QDRO. The interested reader should consult Chief Judge Posner's concise discussion in *Metropolitan Life Ins. Co. v. Wheaton,* 42 F.3d 1080 (7th Cir.1994).

here with an "employee welfare benefit plan," not an "employee pension benefit plan." 29 U.S.C. §§ 1002(1), (2)(A). In many respects, Congress elected to regulate welfare benefit plans less rigorously. *See, e.g., Jensen v. SIPCO, Inc.,* 38 F.3d 945, 949 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995). The distinction is vital, for in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 836–38, 108 S.Ct. 2182, 2188–90, 100 L.Ed.2d 836 (1988), the Supreme Court held that the anti-alienation provision restricts only alienation of pension plan benefits:

> ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 29 U.S.C. § 1056(d)(1). Congress did not enact any similar provision applicable to ERISA *welfare* benefit plans, such as the one at issue in this case.... In a comprehensive regulatory scheme like ERISA, such omissions are significant.... We therefore conclude that Congress did not intend to preclude state-law attachment of ERISA welfare plan benefits.

Because the anti-alienation provision does not apply to welfare plan benefits, Phyllis's divorce decree need not be a QDRO to avoid that provision. *Carland v. Metropolitan Life Insurance Co.,* 935 F.2d 1114 (10th Cir.), *cert. denied,* 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991), on which the district court relied, is not to the contrary. *Carland* held that QDROs are exempt from ERISA's general preemption clause, 29 U.S.C. § 1144. 935 F.2d at 1119–20. The Tenth Circuit did not consider the scope of the anti-alienation provision.

■■■ 2. Phyllis's claim under the divorce decree is also not barred by ERISA's general preemption clause, which declares that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). ERISA preemption makes the designation of plan beneficiaries and the determination of who is entitled to plan benefits questions of federal law.

But we have rejected the proposition that ERISA entirely preempts the effect of a state-law divorce decree on the rights of a welfare benefit plan's participants and beneficiaries, *see Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989), and the Supreme Court laid that proposition to rest in *Mackey. See* 486 U.S. at 839, 108 S.Ct. at 2190 ("Congress thought that some courts had erroneously construed [§ 1144(a) ] as pre-empting [domestic relations] orders").

■■■ As *Mackey* made clear, Congress has not prohibited the assignment or alienation of welfare plan benefits. Thus, a state law divorce decree effecting or prohibiting such a transfer does not conflict with ERISA. *See Wheaton,* 42 F.3d at 1086–87 (Manion, J., concurring). However, federal law controls whether Phyllis's claim to the policy proceeds will prevail.

■■■ 3. There is no other ERISA provision that expressly governs this dispute between benefit claimants. *See Mohamed v. Kerr,* 53 F.3d 911, 913 (8th Cir.1995); *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 14 (2d Cir.1993) (ERISA is "silent on the matter of which party shall be deemed beneficiary among disputing claimants"); *Lyman,* 877 F.2d at 693 ("None of ERISA's express provisions addresses the issue presented in this case"). The provision that "a fiduciary shall discharge his duties with respect to a plan ... in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1), is of course important guidance, but it does not prescribe how to resolve conflicting claims that the plan administrator has interpleaded. In addition, while an insurer such as Equitable has a contractual obligation to pay valid claims, an insurer is typically not acting in a fiduciary capacity when handling benefit claims. *See Kerns v. Benefit Trust Life Ins. Co.,* 992 F.2d 214, 216 (8th Cir.1993).

■■■ 4. ERISA expressly provides for judicial review of the denial of or refusal to pay plan benefits. *See* 29 U.S.C. § 1132(a)(1)(B). When an issue in such an action is not expressly governed by ERISA, courts apply federal common law. They "may look to state law for guidance in devel-

oping federal common law, but it is inappropriate to apply state law if it conflicts with ERISA or its underlying policies." *Mohamed,* 53 F.3d at 913.

5. In reviewing a plan administrator's benefits decision, a threshold question is whether the plan gives the decision-maker discretionary authority to rule on benefit claims. If it does, then the plan administrator or insurer *must* make the initial decision, which the court then reviews under a deferential standard of review. *See Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 & n. 2 (8th Cir.1993). However, as *Donatelli* illustrates, insurance policies usually do not reserve such discretionary authority to the insurer, in which case the court in an interpleader action such as this may resolve the conflicting benefit claims *de novo.*[3]

6. In this case, Equitable filed an interpleader action and deposited Austin's plan benefits into court. Phyllis and Nancy have not accused Equitable or U.S. West of wrongful conduct such as bad faith denial of a claim. Equitable has not asked for its costs or attorney's fees and has been dismissed from the case. In these circumstances, while testimony by U.S. West and Equitable as to how they view the competing claims under the plan documents will be highly relevant,[4] the policies and purposes of ERISA are not intensely affected by the determination of whether Phyllis or Nancy is entitled to Austin's plan benefits. In other words, having reached this point in the ERISA analysis, a trial court can safely analogize its task to that of an interpleader court applying life insurance beneficiary principles under state law.

An example may illustrate the importance of state law in this context. Suppose that, when the district court obtained personal jurisdiction over the competing claimants, Phyllis filed a cross claim alleging that Nancy had tortiously interfered with Phyllis's rights under the divorce decree by inducing Austin to change policy beneficiaries.[5] The district court would likely have pendent jurisdiction over this state law claim, and the fact that, if successful, the claim may ultimately be satisfied out of ERISA plan benefits seems a wholly inadequate basis to preempt the claim. If state law will govern this type of claim, which is asserted directly between interpleaded would-be ERISA beneficiaries, that strongly suggests that state law should provide the dispositive guidance on the antecedent question of which claim to the plan benefits should prevail. That is why our decisions in *Lyman* and *Mohamed* looked favorably upon borrowing state law to resolve claimant disputes. *Accord Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995).

7. We discuss the question of applicable law in some detail in part because in this case it may well be more than academic. Phyllis argues that she should prevail because the divorce decree provides her with a "vested equitable interest" in the insurance proceeds. But apparently only some States have adopted that doctrine. *See Murphy v. Travelers Ins. Co.,* 534 F.2d 1155, 1160–61 (5th Cir.1976). This is an issue of family law outside the realm of federal interest. *See Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). Thus, we conclude that the federal common law to be applied is (i) a choice-of-state-law issue, and then (ii) an application of the relevant state law. Those may or may not be difficult inquiries, but they have the advantage of being similar to the inquiries

---

**3.** The record on appeal contains only a portion of the U.S. West plan documents so this issue must be addressed on remand.

**4.** The U.S. West plan administrator testified by deposition that U.S. West had timely notice of Phyllis's claim under the divorce decree because the plan does not require notice of a claim at the time of death as long as notice is received prior to payment of the proceeds. The administrator expressed no opinion as to which claimant is entitled to the policy proceeds, explaining that U.S. West and Equitable simply file interpleader actions whenever they receive competing, non-frivolous claims.

**5.** This is purely hypothetical. Given the ambiguous divorce decree here at issue, and the fact that Austin changed policy beneficiaries before the change that designated Nancy as primary beneficiary, we see no basis for the assertion of such a claim on the facts of this case.

that the claimants' attorneys and the court would make if this Equitable policy were not governed by ERISA. In our view, once Equitable and U.S. West have protected the interests of ERISA administrators through the shelter of an interpleader procedure, the interests of ERISA beneficiaries are best served by resolving the claimants' dispute under traditional state insurance and family law principles.

The judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.