METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,

v.

Virginia WILLIAMS and Janice Philman, Defendants.

No. 98–196–CIV–J–HTS.

United States District Court, M.D. Florida, Jacksonville Division.

Dec. 30, 1999.

Gregory D. Swartwood, Unger, Swartwood, Latham & Indest, P.A., Orlando, FL, for plaintiff, Metropolitan Life Insurance Company.

Donald E. Holmes, Holmes & Pickens, P.A., Palatka, FL, for defendant, Virginia Williams.

Janice Philman, defendant pro se.

## OPINION AND ORDER[1]

SNYDER, United States Magistrate Judge.

### STATUS

This action is before the Court on a Complaint for Interpleader (Doc. # 1; Complaint), filed by Metropolitan Life Insurance Company (Metlife). The basis of the action is a dispute between two claimants for the proceeds of a life insurance policy issued by Metlife. The two claimants are the deceased's former wife, Virginia Williams (Ms. Williams), and a friend of the deceased, Janice "Cookie" Philman (Ms. Philman).

Metlife filed its Complaint invoking federal jurisdiction because this concerns an

---

1. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Order (Doc. # 19).

Employee Retirement Income Security Act (ERISA) "regulated employee welfare benefit plan." Complaint at 2. Both Ms. Williams and Ms. Philman responded to the Complaint asserting their competing claims to the policy proceeds. *See* Answer and Claim (Doc. # 4); Answer and Claim (Doc. # 7). Subsequently, Metlife deposited the amount in controversy, $51,500.00 plus interest, into the Court Registry (Doc. # 14), and moved to be dismissed from the action. *See* Metropolitan Life Insurance Company's Motion to Dismiss (Doc. # 16). Metlife was dismissed with prejudice from the case, *see* Order (Doc. # 22), and the action proceeded to trial with the two remaining defendants.

## FINDINGS OF FACT

Francis D. "Jack" Williams, Jr. (Mr. Williams or Deceased) and Ms. Williams were married in June 1961. They remained married for almost twenty-seven years and had one child, an adopted daughter. Through his employment with General Motors, Mr. Williams was insured under a group life insurance policy issued by Metlife.

Mr. Williams and Ms. Williams divorced in April 1988. *See* Joint Exhibit 3,[2] Final Judgment of Dissolution of Marriage. They were able to reach an amicable agreement as to the division of their property and this was reduced to writing in a Marital Settlement Agreement (Agreement) attached to the Final Judgment of Dissolution of Marriage. The Agreement provided Ms. Williams would be the beneficiary of the life insurance policy issued by Metlife. Ms. Williams also assumed the benefits of two other life insurance policies and retained a recently purchased automobile. In exchange for being named the beneficiary in the Metlife policy, Ms. Williams relinquished her claims for alimony and support for their daughter. Additionally, Mr. Williams retained some cash, shares of stock, and the benefits of another life insurance policy.

The division of property was agreed to before the Williams went to see an attorney and most of the agreements were made in the presence of their daughter. In the divorce proceedings Mr. and Ms. Williams used the same attorney, Donald E. Holmes, because they both knew and trusted him. Both Mr. and Ms. Williams signed the Agreement in February 1988.

Subsequent to the divorce Mr. Williams remarried twice. Ms. Philman met Mr. Williams during his third marriage, which ended in divorce in April 1996. According to Ms. Philman, he felt unloved and useless and she gave him friendship. On November 20, 1996, the Deceased executed a Designation of Beneficiary form naming Ms. Philman as the primary beneficiary of 100% of the Metlife policy. *See* Joint Exhibit 4, Designation of Beneficiary Under the General Motors Life and Disability Benefits Program. A witness for Ms. Philman testified that, subsequent to his last marriage, Mr. Williams planned to make Ms. Philman the beneficiary of the life insurance policy. Testimony was also provided to the effect that Mr. Williams said on several occasions prior to his death that he wanted Ms. Philman to receive the proceeds of the Metlife policy.

Mr. Williams passed away on May 7, 1997. Ms. Philman said she learned of Mr. Williams' death when a friend called and said Mr. Williams' obituary was in the newspaper. Mr. Williams' daughter made the funeral arrangements and the funeral was paid for by Ms. Williams.

## ANALYSIS

Initially, the Court must decide whether ERISA's anti-alienation provision, specifi-

---

**2.** All of the Joint Exhibits are attached to the Exhibit List (Doc. # 28).

cally 29 U.S.C. § 1056(d)(1),[3] applies to a life insurance policy. Courts generally agree the provision does not apply. *See* discussion *infra.* The next step in the analysis concerns federal preemption. The circuit courts addressing the issue of whether state or federal law determines the true beneficiary of the policy are split. If federal law applies, the Court must determine whether the state court order designating the beneficiary is a Qualified Domestic Relations Order (QDRO), as defined by ERISA. If a valid QDRO, the Court must finally resolve the competing claims to the life insurance proceeds.

### A. Choice of Law

█ One approach to these issues is that espoused by the Eighth Circuit in *Equitable Life Assurance Society of the United States v. Crysler,* 66 F.3d 944 (8th Cir.1995).[4] The facts of *Crysler* are similar to the present case in that two individu-

als were making claims to the proceeds of a life insurance policy governed by ERISA. *See id.* at 946. As in the present case, one of the claimants was the last designated beneficiary, while the competing claim was based on a divorce decree allegedly prohibiting beneficiary changes. *See id. Crysler* began with the definitions of "employee welfare benefit plan" and "employee pension benefit plan" provided at 29 U.S.C. §§ 1002(1)[5] and (2)(A).[6] *Id.* at 947–48. Citing *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the court reasoned that Congress chose to regulate welfare benefits less stringently than pension benefits.[7] *See id.* at 948. As support, the court in *Crysler* pointed to the explicit bar in 29 U.S.C. § 1056(d)(1) as to pension benefit plans and the omission of such a bar pertaining to welfare benefit plans. *See id.* Thus, it concluded the anti-alienation provision does not apply to welfare benefits which

---

3. 29 U.S.C. § 1056(d)(1) states "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

4. The Eighth Circuit adopted the concurring opinion of Judge Manion in *Metropolitan Life Insurance Company v. Wheaton,* 42 F.3d 1080, 1085 (7th Cir.1994). *See Crysler,* 66 F.3d at 948.

5. Section 1002(1) states:

   The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

6. Section 1002(2)(A) provides:

   Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
   (i) provides retirement income to employees, or
   (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

7. *See Boggs v. Boggs,* 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (stating ERISA preempts testamentary transfers of pension plan benefits pursuant to Louisiana state law).

encompass life insurance proceeds. *See id.*

The Eighth Circuit then addressed whether ERISA's general preemption clause applies to the state divorce decree. *See Crysler,* 66 F.3d at 948. Turning again to *Mackey,* the court reasoned that because the alienation of welfare benefits is not prohibited, a state court decree designating a particular beneficiary cannot conflict with ERISA and accordingly, is not preempted. *See id.; see also Emard v. Hughes Aircraft Co.,* 153 F.3d 949, 957 (9th Cir.1998) (holding "that ERISA does not preempt California's law of community property").

The final step in *Crysler* is for the court to resolve the competing claims. Because ERISA is silent on this issue, the Eighth Circuit determined federal common law should resolve the dispute. *See Crysler,* 66 F.3d at 948. A court "'may look to state law for guidance in developing federal common law, but it is inappropriate to apply state law if it conflicts with ERISA or its underlying policies.'" *Id.* at 948–49 (quoting Mohamed v. Kerr, 53 F.3d 911, 913 (8th Cir.1995)). The Eighth Circuit concluded "the interests of ERISA beneficiaries are best served by" applying state law principles in that instance. *Id.* at 950.

The Sixth Circuit, in *Metropolitan Life Insurance Co. v. Marsh,* 119 F.3d 415 (6th Cir.1997), agreed, at the outset, with the Eighth Circuit in that the anti-alienation provision does not apply to welfare plans.[8] *See id.* at 419. The two opinions diverged on the issue of federal preemption. *See id.* at 420. The Sixth Circuit noted the opinion of the Eighth Circuit and Judge Man-

ion's concurrence which, citing *Mackey,* concluded that state divorce decrees are outside the scope of ERISA's general preemption clause. *See id.* However, the Sixth Circuit stated this reliance on *Mackey* is misplaced. *See id.; see also Metropolitan Life Ins. Co. v. Pettit,* 164 F.3d 857, 864–65 (4th Cir.1998) (finding a claim brought under state law based on a property settlement was preempted by ERISA).

*Mackey* held that the general preemption clause does not apply to garnishment laws because ERISA does not address attachment of funds for satisfying a debt. *See Mackey* 486 U.S. at 833, 837, 108 S.Ct. 2182. But, the designation of beneficiaries is explicitly addressed in ERISA. *See Marsh,* 119 F.3d at 421; *see also Pettit,* 164 F.3d at 864–65. Furthermore, the divorce decree in *Marsh* "directly conflict[ed] with § 1104(a)(1)(D) and the plan documents, which direct[ed] the plan administrator to provide the benefits to the last named beneficiary." *Marsh,* 119 F.3d at 421. The court in *Marsh* determined the state divorce decree was "preempted by the general preemption clause, [29 U.S.C. § 1144(a),[9] in] ERISA unless saved by 29 U.S.C. § 1144(b)(7)." *Id.* Thus, while the Eighth and Ninth Circuits' view is that state law claims concerning welfare benefits do not necessarily conflict with ERISA's provisions, the Fourth and Sixth Circuits hold the preemption clause of ERISA applies to any employee benefit plan, be it pension or welfare.

Although the Eleventh Circuit has analyzed ERISA preemption under the recent Supreme Court approach, it has not considered a claim based on a state divorce

---

8. The *Marsh* Court specifically noted "[s]ection 1051 states in pertinent part: 'This part shall apply to any employee benefit plan described in section 1003(a) of this title (and not exempted under section 1003(b) of this title) other than—(1) an employee welfare benefit plan; ....' 29 U.S.C. § 1051(1)." *Marsh,* 119 F.3d at 419 n. 5.

9. Title 29 U.S.C. § 1144(a) instructs that ERISA "'shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan' covered by the statute." *Marsh,* 119 F.3d at 420 (quoting 29 U.S.C. § 1144(a)).

decree.[10] In *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. 1996) (en banc), the court analyzed the impact of ERISA preemption on state law fraudulent inducement and negligence claims. At the outset, the Eleventh Circuit acknowledged that its "decisions in the ERISA preemption area have been neither consistent nor clear." *Id.* at 718. The specific language that has been the subject of varying interpretation is Section 514(a) of ERISA, which states its provisions "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The court then traced previous Supreme Court case law which, until 1995, generally gave an expansive reading to the phrase "relate to." *See id.* at 719–721.

However, in *New York State Conference*, the Court altered its broad interpretation of the preemption clause and held courts must "look instead to the objectives of the ERISA statute as a guide." *New York State Conference*, 514 U.S. at 656, 115 S.Ct. 1671. Applying *New York State Conference*, the *Morstein* court concluded that because the "state law claim [was] brought against a non-ERISA entity [which did] not affect relations among principal ERISA entities as such then it [was] not preempted." *Morstein*, 93 F.3d at 722.

■ The present case concerns an ERISA-controlled life insurance policy. Although there is no provision in ERISA for the resolution of conflicting claims, "a fiduciary shall discharge his duties ... in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1). It is clear the Final Judgment of Dissolution of Marriage affects the ultimate beneficiary of the policy and, thus, impacts the objectives of ERISA. Accordingly, the Agreement is preempted by ERISA unless it falls within the exception for a Qualified Domestic Relations Order.

## B. Qualified Domestic Relations Order

■ The Eleventh Circuit has not addressed the question of whether a divorce decree in a state court action, which affects a welfare plan, could meet the definition of a QDRO and, thus, exempt it from ERISA preemption. Title 29 U.S.C. § 1056 contains the prerequisites for a QDRO, but this section only pertains to pension plans.[11] Still, several circuits have taken the position "that 29 U.S.C. § 1144(b)(7) excepts QDROS from ERISA preemption with respect to welfare plans as well as pension plans." *Marsh*, 119 F.3d at 421 (relying on the Seventh Circuit's opinion in *Wheaton*, 42 F.3d at 1084, and the Tenth Circuit's in *Carland v. Metropolitan Life Insurance Co.*, 935 F.2d 1114, 1119–20 (10th Cir.1991)). The type of plan is not an element of the definition in 29 U.S.C. § 1056(d)(3)(B)(i), and the Court is in agreement with the aforementioned circuits that it "makes more practical sense" that the QDRO exception applies to all ERISA plans. *Wheaton*, 42 F.3d at 1084.

The Williams' Final Judgment of Dissolution of Marriage will be considered a QDRO if it meets the requirements set forth in the definition. The requirements are:

**10.** Relying on earlier Supreme Court case law, the Eleventh Circuit has held a state divorce decree which designates a beneficiary in a group life insurance policy of an employee benefit package is preempted by ERISA. *See Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193, 1195 (11th Cir.1991). *But see New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, 662, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (stating in part that "state laws [should] bear the requisite 'connection with' ERISA plans to trigger pre-emption").

**11.** A QDRO is a limited exception to the pension plan anti-alienation provision.

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C).

A review of the Agreement attached to the Final Judgment of Dissolution of Marriage shows it provides the information required in parts (ii), (iii), and (iv) of the definition.[12] Specifically, as to part (ii), it indicates Ms. Williams is to receive all of the proceeds in that she "is currently named as the beneficiary of said policy and said designation of beneficiary shall not be altered or changed so as to name any person other than the wife as beneficiary without the specific and written consent of the wife." Joint Exhibit 3, Marital Settlement Agreement ¶ 7(c). The Agreement states the policy "benefits are payable upon the death of the husband," *id.* ¶ 7, satisfying element (iii) of the definition. Part (iv) is met in that the Agreement clearly identifies the "policy issued by or through the General Motors Acceptance Corporation in the approximate face amount of $51,500.00." *Id.* ¶ 7(c).

■ Part (i) of the QDRO definition requires the name and last known mailing address of the participant and the alternate payee. The Agreement contains both parties' names and the address of certain real property, indicating it has been transferred to Ms. Williams. Joint Exhibit 3, Marital Settlement Agreement ¶ 8. However, this is not specifically identified as Ms. Williams' address [13] and the Deceased's address is also omitted from the Agreement.

■ The standard in evaluating whether a state judgment meets the requirements for QDRO status is a flexible one. In *Wheaton,* the Seventh Circuit held that, although the addresses of the designated beneficiaries were omitted from the domestic relations order, the address of a custodial parent demonstrated substantial compliance with the criteria for QDRO designation. *Wheaton,* 42 F.3d at 1084; *see also Marsh,* 119 F.3d at 422; *Carland,* 935 F.2d at 1120 (noting the address of a beneficiary's attorneys is a sufficient substitute where the participant and beneficiary's addresses are omitted). The reason for requiring the information is so the identity of the beneficiary can be easily determined and the goals of ERISA served. *See Carland,* 935 F.2d at 1120. The absence of Mr. Williams' address from the Agreement and the lack of specificity as to Ms. Williams' address does not frustrate this purpose. The beneficiary of the policy, according to the Agreement, can be determined from the information provided in the Agreement. Furthermore, if neces-

---

12. Although Ms. Williams testified that the Agreement was signed by herself and Mr. Williams at the same time, the document reflects she signed it on February 11, 1988, and Mr. Williams signed it on February 16, 1988.

The portion of the Agreement concerning the policy at stake in this case provides:

That policy issued by or through the General Motors Acceptance Corporation in the approximate face amount of $51,500.00 shall be retained by the wife. The wife is currently named as the beneficiary of said policy and said designation of beneficiary

shall not be altered or changed so as to name any person other than the wife as beneficiary without the specific and written consent of the wife. All premiums attributable to said policy have been paid in full. Joint Exhibit 3, Marital Settlement Agreement ¶ 7(c).

13. This is the same address provided in Ms. Williams' claim to Metlife. *See* Joint Composite Exhibit 5.

sary, it is likely both Ms. Williams' address could be verified and Mr. Williams' former address could easily be obtained from the administrator's records, from the state court records, or from Mr. Holmes, the attorney who prepared the Agreement and whose address and telephone number appear on the Agreement.[14] The Court finds the Agreement is a QDRO and is, therefore, excepted from preemption under ERISA.

### C.  The Competing Claims

The Court is now left with Ms. Williams' claim from the Agreement and Ms. Philman's claim based on the Designation of Beneficiary form. The final step of the analysis is to determine which of the competing claims prevails. In the absence of a governing ERISA provision, the Court looks to state law to resolve this question. *See Crysler,* 66 F.3d at 949–50; *Aetna Life Ins. Co. v. Hager,* 930 F.Supp. 343, 347 (E.D.Wis.1996).

█ A review of the relevant Florida case law shows resolution of such competing claims is dependent on the facts. Where the rights of a beneficiary named in a divorce decree have vested, that party will prevail over the claim of a gratuitous transferee. *Vath v. Vath,* 432 So.2d 806, 807 (Fla. 1st Dist.Ct.App.1983), concerned a final judgment of dissolution of marriage that required the husband to maintain his existing life insurance policies and name his children as beneficiaries. The husband subsequently changed the designation and named his then current wife as the beneficiary. *See id.* Because he was required to *maintain* the policies for the children, the court held their rights had vested and thus, the beneficiary could not be changed. *See id.* at 808–809 (relying on *Dixon v. Dixon,* 184 So.2d 478 (Fla.2d Dist.Ct.App.

1966) and *Pensyl v. Moore,* 415 So.2d 771 (Fla.3d Dist.Ct.App.1982)).

In the present case, the Agreement attached to the Final Judgment of Dissolution of Marriage shows Mr. and Ms. Williams reached an agreement as to the division of their property. Ms. Williams waived her claims for alimony and child support in part in exchange for her right to the insurance proceeds. Additionally, there was no intervening contingency as all premiums on the policy had been paid. The Court concludes Ms. Williams' claim to the policy proceeds vested upon execution of the Agreement and Mr. Williams waived his right to change the beneficiary.

At the time Ms. Philman prepared and Mr. Williams signed the change of beneficiary form, *see* Joint Exhibit 4, he no longer retained the prerogative of renaming the beneficiary. Just as in *Dixon,* the terms of the Agreement, adopted and incorporated into the Final Judgment of Dissolution of Marriage, *see* Joint Exhibit 3, "were so encompassing as to amount to a surrender of the essential incidents of ownership." *Dixon,* 184 So.2d at 481; *see also Vath,* 432 So.2d at 808; *Pensyl,* 415 So.2d at 773.

Accordingly, the Court finds Ms. Williams' claim prevails. The Clerk of the Court is directed to enter judgment and disburse the Interpleader funds held in the Court's Registry, with interest and less registry fees, to Virginia Williams, 402 Magnolia Drive, Palatka, Florida 32177, Social Security Number 266–52–2926, in care of her attorney Donald E. Holmes, Holmes & Pickens, P.A., 222 North Third Street, Palatka, Florida 32177. Upon disbursal of the funds from the Court's Registry, this Interpleader action is dismissed with prejudice.

14. Testimony established Mr. Holmes' telephone number as provided in the Agreement

is still valid.