BENTON, J.
On motion for summary judgment, the trial judge ruled that Cora Joy Lovallo was, by virtue of a dissolution decree, the equitable owner of a ten-year, renewable, term life insurance policy her former husband purchased from Jackson National Life Insurance Company and, for that reason, individually entitled to notice, as the end of the original term approached, of her right to renew the policy.[1] Ms. Lovallo became the equitable owner of the policy, the trial judge concluded, as a result of the decree incorporating the terms of the marital settlement agreement she entered into with her former husband; and she so advised Jackson National before the policy expired.
We assume without deciding that the trial judge ruled correctly that Ms. Lovallo has all the rights of any owner of the policy. See Dixon v. Dixon, 184 So.2d 478, 481 (Fla. 2d DCA 1966) (“We hold that the terms of the stipulation were so encompassing as to amount to a surrender of the essential incidents of ownership. If a person may make a parole gift of his policy ownership, a fortiori he may, by written stipulation concurrent with the bargaining inherent in a divorce settlement, similarly divest himself of his ownership interest in an insurance policy.”); Primerica Life Ins. Co. v. Moore, 2008 WL 1886032, at *4 (M.D.Fla. Apr. 28, 2008) (“[T]he Moore divorce decree ... divested Joe Moore of his ownership of the life insurance policy and created an indefeasible interest in the proceeds of the life insurance policy in [his three daughters].”); Metro. Life Ins. Co. v. Williams, 82 F.Supp.2d 1346, 1353 (M.D.Fla.1999) (“Just as in Dixon, the terms of the Agreement, adopted and incorporated into the Final Judgment of Dissolution of Marriage ..., ‘were so encompassing as to amount to a surrender of the essential incidents of ownership.’ ” (quoting Dixon, 184 So.2d at 481)); Prudential Ins. Co. of Am. v. Boyd, 781 F.2d 1494, 1497 (11th Cir.1986) (“This Court is required by Dixon to hold that, by the terms of his divorce decree, Daniel Boyd was divested of his ownership of the proceeds of his life insurance policy with Prudential.”); Pensyl v. Moore, 415 So.2d 771, 772 (Fla. 3d DCA 1982) (affirming based on Dixon in an “almost identical” case).
The trial court also ruled, however, that, as an owner of the policy — -which we assume she was, for purposes of decision — Ms. Lovallo was entitled to additional notice of the right to renew the policy, shortly before the time to renew expired. But the terms of the policy confer no right to any notice — apart from the language of the policy itself — of an owner’s right to secure additional coverage after the initial ten-year term expires. Nor is such a right conferred by statute, even though statutes do confer a right to notice of the renewal premium (or notice of nonrenewal) for other kinds of insurance policies.[2]
*1244 We are concerned here with the right to renew, not with simple non-payment of premiums. Section 627.4555, Florida Statutes (2008), which requires issuers of life insurance policies to notify policy holders of the nonpayment of premiums, only applies, moreover, to policies issued on or after October 1, 1997, and thus has no application to the policy in dispute here, which was issued in 1994.
There being no contractual, statutory, or common law basis upon which an owner of a renewable, term life insurance policy is entitled to receive notice of the right to renew beyond the notice in the policy itself, we are constrained to reverse the summary judgment entered below. We are not persuaded by Ms. Lovallo’s argument that, because premiums were paid during the original term by electronic funds transfers, the common law required additional notice of the right to renew the policy.
No other question is before us and we decide no other question in the case. We express no view, for example, on whether any communication between the parties constituted a request for renewal of the policy, or imposed any duty on Jackson National to seek clarification.
Reversed and remanded for further proceedings.
WOLF and BROWNING, JJ., concur.

. After the expiration of the initial ten-year term, the policy could have been renewed, but the premiums would have increased dramatically. The former husband was aware of the right to renew the policy, but instructed the company not to renew it, some months before his demise.

. See § 627.728(4)(a), Fla. Stat. (2008) ("No insurer shall fail to renew a [motor vehicle insurance] policy unless it mails or delivers to the named insured, at the address shown in the policy, and to the named insured's insurance agent at her or his business address, at least 45 days’ advance notice of its intention not to renew; and the reasons for refusal to renew must accompany such notice.”); § 627.4133(1)(a), Fla. Stat. (2008) ("An insurer issuing a policy providing coverage for workers’ compensation and employer’s liability insurance, property, casualty, except mortgage guaranty, surety, or marine insurance, other than motor vehicle insurance subject to s. 627.728, shall give the named insured at *1244 least 45 days' advance written notice of non-renewal or of the renewal premium.”). The principle of expressio unius est exclusio alteri-us, which means "the mention of one thing implies the exclusion of another,” Rotemi Realty, Inc. v. Act Realty Co., 911 So.2d 1181, 1187 (Fla.2005) (citing Grenitz v. Tomlian, 858 So.2d 999, 1002 (Fla.2003)), supports the conclusion that the Florida Legislature did not intend to obligate life insurance carriers to provide notice of the right to renew to holders of term life insurance policies.